UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF GEORGIA

ATLANTA DIVISION

| | |
|---|---|
| NOOR ABDEL-SAMED<br>*versus*<br>L.E.K. CONSULTING AMERICA INC. | Civil Action Number<br>1:25-cv-3051-SDG-LRS |

**ORDER**

This case is before the Court on Plaintiff Noor Abdel-Samed's challenge to Defendant L.E.K. Consulting America Inc.'s (LEK) withholding certain emails on the grounds of attorney-client privilege and attorney work-product protection. After a discovery conference, the parties agreed to allow an *in camera* review of the documents numbered LEK 245-251, 254-276, 291-300, and 328-342. [Doc. 51.]

The Court has completed its review and finds that the emails in LEK 328–342 were properly withheld, but that neither privilege nor work-product protection attach to the entire emails themselves in LEK 245–251, 254–276, 291–300 and, thus, those documents should be produced to Abdel-Samed without attachments and with certain noted redactions.

**Legal Standard**

Generally, the scope of discovery includes "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." FED. R. CIV. P. 26(b)(1). The purpose of attorney-client privilege "is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). "The attorney-client privilege attaches, of course, to confidential communications between an attorney and client for the purposes of securing legal advice or assistance." *Drummond Co., Inc. v. Conrad & Scherer, LLP*, 885 F.3d 1324, 1334 (11th Cir. 2018). "The privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney." *Upjohn Co.*, 449 U.S. at 395.

"The party claiming the privilege must generally establish the following elements: (1) the holder of privilege is a client; (2) the person to whom communication was made is a member of the bar and that person is acting as a lawyer in connection with the communication; (3) the communication relates to a fact of which attorney was informed by the client without the presence of strangers for the purpose of securing legal advice; and (4) the privilege is claimed and not waived by the client." *United States v. Davita, Inc.*, 301 F.R.D. 676, 680 (N.D. Ga. 2014). But "a communication is not necessarily privileged simply because a company lawyer is copied." *Id.* at

682. Instead, the communication must have been confidential and its "primary purpose . . . was to relay, request, or transmit legal advice." *Id.*

Attorney work product protection "extends to material obtained or prepared by counsel in the course of their legal duties provided that the work was done with an eye toward litigation." *Drummond*, 885 F.3d at 1334-35. "Work product protection prevents most inquiries into an attorney's work files and mental impressions." *Id.* at 1335.

## Discussion

### A. Group 1 – LEK 245- 251

LEK's privilege log asserts that this set of documents consists of emails "seeking and providing legal advice regarding separation vote concerning" Abdel-Samed. The emails are from LEK's general counsel, Shuba Satyaprasad, to LEK partners.

Although the emails are from Satyaprasad, they do not involve legal advice such that privilege attaches. Instead, the emails discuss scheduling the separation vote and the voting process. Nor do these emails reflect Satyaprasad's mental impressions or other preparation for litigation such that they would qualify for work-product protection. To the contrary, these are essentially cover emails seeking a partnership vote that could have been sent by a non-attorney.

The emails refer to several attachments. These individual attachments are not scheduled on LEK's privilege log and the Court is unaware of whether LEK is asserting privilege over each of them individually, or

whether LEK withheld them simply because they were attached to emails that LEK argued were privileged or otherwise protected from disclosure. Nor has the Court been presented to this point with arguments from the parties concerning the nondisclosure of each individual document. Accordingly, the Court's review does not extend to these attachments, and the Court refrains from weighing in on their disclosure at this time. Rather, should LEK wish to withhold any of these attachments, it should schedule them individually on its privilege log with adequate descriptions such that Abdel-Samed may properly challenge their nondisclosure should he so choose.

Accordingly, the emails themselves in LEK 245-251 (without attachments) should be disclosed to Abdel-Samed and LEK should either disclose the individual attachments or schedule each of the attachments that it wishes not to disclose individually on a revised privilege log.

**B. Group 2 – LEK 254-276**

LEK's privilege log again states that these emails seek and provide "legal advice regarding separation vote concerning" Abdel-Samed. The emails are between Satyaprasad and senior firm leaders. They include drafts of the Board minutes and the Partner memorandum that was to be distributed to the partners in preparation for their vote with respect to Abdel-Samed.

Again, although the emails involve Satyaprasad, they largely do not involve legal advice such that privilege attaches. The emails pass along draft Board minutes and memos and mostly involve business considerations, rather than legal ones, as to how to present the issues. A

blanket refusal to provide these emails, then, is inappropriate. The following sections within the emails may be redacted because, in these places, firm leaders refer to legal discussions or ask for legal guidance and Satyaprasad provides it:

- The final paragraph of Faircloth's May 12, 2025, 5:12 AM email (repeated on pages 256, 260, 264, 267, 271, 275); and
- Sunderland's first bullet and sub-bullet in his email under "On the minutes" (repeated on pages 255, 258 (including redacting the inline comment), 262, 265, 269, 273).

The emails otherwise do not reflect Satyaprasad's mental impressions or other preparation for litigation such that they would qualify for work-product protection, either.

As with the previous set of emails, the emails refer to several linked attachments, which are not scheduled on LEK's privilege log and which have not been individually placed at issue by the parties up to this point. Accordingly, the Court's review does not extend to these attachments and the Court refrains from weighing in on their disclosure at this time. Rather, should LEK wish to withhold any of these attachments, it should schedule them individually on its privilege log with adequate descriptions such that Abdel-Samed may properly challenge their nondisclosure should he so choose.

In sum, the emails themselves in LEK 254-276 (without attachments but with the above-referenced redactions) should be disclosed to Abdel-Samed and LEK should either disclose the individual attachments or

schedule each of the attachments that it wishes not to disclose individually on a revised privilege log.

**C. Group 3 – LEK 291 – 300**

The privilege log again asserts that these emails seek and provide "legal advice regarding separation vote concerning" Abdel-Samed. The emails include discussion of the upcoming separation vote and its requirements.

These emails largely do not involve legal advice such that privilege attaches. Instead, the emails discuss how  to present a memo to achieve a certain Board vote, rather than legal strategy or considerations. Nor do these emails reflect Satyaprasad's mental impressions or other preparation for litigation such that they would qualify for work-product protection. LEK may redact one sentence from Woods's email to Satyaprasad that appears to refer to legal advice that she presented. The sentence is "B" in a list Woods writes, which is repeated on pages 291, 294, 296, 299, and 300.

In sum, the emails themselves in LEK 291 – 300 (with the above-referenced redactions) should be disclosed to Abdel-Samed.

**D. Group 4 – LEK 328 – 342**

The privilege log states that these emails involve "engaging counsel for seeking and providing legal advice regarding safety concerns related to" Abdel-Samed. These email consist of messages between Dr. Marc McElhaney and LEK's outside litigation counsel, Ropes & Gray LLP.

These emails were appropriately withheld as they discuss the scope of engaging Dr. McElhaney, a consulting, non-testifying expert, by outside counsel for the purpose of assisting in legal advice. They are also attorney

work-product to the extent they include substantive information between outside counsel and its expert concerning the pending dispute in anticipation of litigation. *See Spirit Master Funding, LLC v. Pike Nurseries Acquisition, LLC*, 287 F.R.D. 680, 685-86 (N.D. Ga. 2012) (finding that work product protection attached to communications with non-testifying consulting experts who were retained in anticipation of litigation even if they also assisted with a business decision).

## Conclusion

For the foregoing reasons, the undersigned concludes that the emails in LEK 328–342 were properly withheld, but that LEK must disclose to Abdel-Samed within three days the emails themselves in LEK 245–251 (without attachments), LEK 254–276 (without attachments and with the above-referenced redactions), and LEK 291–300 (with the above-referenced redactions).

**SO ORDERED**, October 22, 2026.

Lawrence R. Sommerfeld
LAWRENCE R. SOMMERFELD
UNITED STATES MAGISTRATE JUDGE